UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DAWN PERRIN,

                Plaintiff,

-against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
11-CV-5110 (FB)

*Appearances:*
*For the Plaintiff:*
CHARLES E. BINDER, ESQ.
Law Offices of Harry J. Binder and
Charles E. Binder, P.C.
60 East 42nd Street, Suite 520
New York, NY 10165

*For the Defendant:*
LORETTA E. LYNCH, ESQ.
United States Attorney
JAMES R. CHO, ESQ.
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

        Plaintiff Dawn Perrin seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act. Both parties move for judgment on the pleadings. For the reasons set forth below, the case is remanded for further proceedings.

**I**

        Perrin claims that she suffers from a seizure disorder and bipolar disorder, which interfere with her memory and concentration, cause her to become confused and disoriented, and can lead to inappropriate behavior. Perrin filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 19, 2010.

After the Social Security Administration denied her applications, she requested a hearing before an Administrative Law Judge ("ALJ").

On May 6, 2011, the ALJ concluded that Perrin was not disabled. AR at 24. Applying the familiar five-step process, the ALJ found that: (1) Perrin had not engaged in substantial gainful activity since November 30, 2009, the alleged onset date; (2) her seizure disorder and bipolar disorder were "severe impairments"; (3) her impairments did not meet the criteria listed in 20 CFR Part 404, Subpart P, Appendix 1; and (4) Perrin was "capable of performing past relevant work as a data entry clerk." AR at 14, 23.[1] This final conclusion was based on the ALJ's finding that Perrin "has the residual functional capacity to perform a full range of work at all exertional levels but with nonexertional limitations limiting the claimant to simple, routine, repetitive work with limited public contact and preclusion from driving an automobile or using machinery due to her seizures." AR at 16.

The Appeals Council denied Perrin's request for review, rendering the Commissioner's decision to deny benefits final. Perrin timely sought judicial review.

II

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to

---

[1] Because the ALJ found Perrin capable of performing past relevant work, there was no need to analyze under step five whether any jobs existed in significant numbers in the national economy that she could perform.

support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Perrin argues that the ALJ erred by (1) violating the treating physician rule, (2) making an unsupported credibility determination, and (3) relying on flawed testimony from the vocational expert.  The Court concludes that the ALJ did not provide valid reasons for discounting the treating physician's opinion or discrediting Perrin's subjective complaints.  These two rulings require remand and further consideration of Perrin's residual functional capacity.  Regarding Perrin's third claim, the Court cannot resolve at this time whether the vocational expert's testimony was appropriate.  A vocational expert's opinion is reliable only when it is based on an appropriate residual functional capacity.  Because the flaws in the ALJ's analysis and the gaps in the record make it impossible for this Court to determine Perrin's residual functional capacity, it is also not possible to determine whether the vocational expert's opinion is appropriate.

**A. The Treating Physician Rule**

Perrin first argues that the ALJ erred by refusing to give controlling weight to the opinion of Dr. Isakov, the psychiatrist who treated her on a monthly basis from 2005 to 2010.  The record contains numerous notes and assessments from Dr. Isakov.  AR at 237-59, 318-27.  He diagnosed Perrin with bipolar disorder, seizure disorder, and amnesic disorder; prescribed Depakote; and noted her confusion, memory lapses, and difficulty focusing.  He cleared Perrin to return to work in April 2009 after a one-week medical leave, AR at 246, but opined in a November 2010 Psychiatric/Psychological Impairment Questionnaire that her conditions were chronic and rendered her unable to work, AR at 320. He indicated his clinical findings on a checklist and described Perrin's primary symptoms in his own words as "mood

3

swings, periods of inappropriate behavior, inability to focus [or] concentrate, [and] very confused or disoriented at times." AR at 321-22. On another checklist, Dr. Isakov found Perrin markedly limited in thirteen mental activities and moderately limited in seven. AR at 323-25. Her marked limitations included her ability to remember locations and procedures, to understand detailed instructions, to carry out simple instructions, and to maintain attention and concentration. AR at 323-24. He opined that her impairments would cause her to miss work frequently and that she is incapable of even low-stress work. AR at 326-27.

Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527 (d)(2)). The ALJ "draws its own conclusions as to whether those data indicate disability," but the ALJ must consider the physician's "ultimate finding of whether a claimant is disabled and cannot work." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.*

The ALJ gave "appropriate weight" to some of Dr. Isakov's findings but "lesser weight" to his functional assessment. AR at 22. Instead of relying on the requisite factors, *see* 20 C.F.R. §§ 404.1527(d), 416.927(d), the ALJ viewed the assessment as the "only vocationally relevant evidence" provided by Perrin and asserted that he could "reject check-off form assessments that do [not] contain explanations of the bases of their conclusions." AR at 22. The ALJ then stated:

4

> The expert testimony and the clinical picture suggest some improvement with Depakote. While the seizures have not been eliminated, dosage adjustment may accomplish this goal and the claimant's clinical picture could become clearer after a neuropsychological consult. Accordingly, Dr. Isakov's material is based upon an incomplete record. There is no seizure disorder specialist who provides any evidence of specificity as to that component of the claimant's claim related to seizures, and the claimant's psychiatric limitations have been taken into account in the above-established residual functional capacity assessment.

AR at 22. These justifications are not "good reasons" for discounting Dr. Isakov's opinion.

First, the ALJ provides no support for his unnecessarily narrow view of Dr. Isakov's functional assessment as the only vocationally relevant evidence. The record contains five years of reports, which collectively reveal the nature and extent of Perrin's limitations.

Second, the ALJ acted inconsistently by discounting Dr. Isakov's checklist but relying on a virtually identical checklist from W. Skranovski, the agency's mental health consultant.[2] AR at 269-70, 323-25. Dr. Skranovski did not find that Perrin suffered from any moderate or marked mental limitations but noted episodes of decompensation. AR at 269-70, 285. Perrin is entitled to know why the ALJ gave more weight to one checklist than to the other. *See Gecevic v. Sec'y of Health & Human Servs.*, 882 F. Supp. 278, 285-86 (E.D.N.Y. 1995) (stating that the ALJ "cannot simply selectively choose evidence in the record that supports his conclusions" and remanding because the ALJ failed to provide reasons for disregarding a medical opinion)**.**

Third, the ALJ's statement that a dosage adjustment could eliminate Perrin's seizures is speculation, unsupported by the record. Dr. Isakov's reliance on the same dosage

---

[2]Though the ALJ refers to W. Skranovski as Dr. Skranovski, Perrin accurately points out that the record does not indicate his credentials.

5

during his extended treatment of Perrin suggests that he did not view a dosage adjustment as a cure. The ALJ erred by "substitut[ing] his own expertise or view of the medical proof for the treating physician's opinion." *Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000).

Finally, the ALJ erred by failing to take any steps to fill a crucial gap in the record. The ALJ acknowledged that the record was "incomplete" and that the "clinical picture could become clearer after a neuropsychological consult," but his only response was to use this gap to discount Dr. Isakov's opinion. AR at 22. This was improper. Although the claimant bears the burden of supplying evidence to establish her impairments, 20 C.F.R. §§ 404.1512(a), 416.912(a), the ALJ determined that the evidence did establish Perrin's seizure disorder and bipolar disorder as severe impairments, AR at 14. The ALJ bears "an affirmative obligation to develop the administrative record," *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999), and failure to do so may require remand, *see Butts*, 388 F.3d at 385-86. Moreover, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). After discovering the gap, the ALJ should have re-contacted Dr. Isakov or requested a neuropsychological consultative examination based upon existing regulations. *See* 20 C.F.R. §§ 404.1512(d)-(f), 404.1519a, 416.912(d)-(f), 416.919a.[3] Dr. Karl Manders, an impartial

---

[3]New regulations took effect on March 26, 2012, which relieve the ALJ of the duty to re-contact the medical source as the first step to resolving an inconsistency or insufficiency, *see* 20 C.F.R. §§ 404.1512, 416.912 (2012), and instead allow the ALJ to "determine the best way to resolve the inconsistency or insufficiency" based on the facts of the case, 20 C.F.R. §§ 404.1520b, 416.920b (2012). The ALJ must attempt to resolve the inconsistency or insufficiency by taking one or more of the following approaches: (1) re-contacting the treating physician or other medical source, (2) requesting additional existing records, (3) asking the claimant to undergo a consultative examination, or (4) asking the claimant or others for further information. *Id.* §§ 404.1520b(c)(1)-(4),

neurologist, repeatedly cited the need for a neuropsychological evaluation to determine the cause and extent of Perrin's symptoms. AR at 56-58. Dr. Sharon Grand, an impartial psychologist, also expressed concerns about making an opinion based on the state of the record. AR at 76.

Further, the ALJ offered no explanation as to why the absence of the neuropsychological evaluation rendered the record "incomplete" only as to Dr. Isakov's opinion. The ALJ afforded "greater weight" to Dr. Jennifer Kyle, the agency's consultative psychological examiner, Dr. Iqbal Teli, the agency's consultative internal medicine examiner, and Dr. Skranovski, the agency's consultant, because they "were provided with the entirety of the treatment record." AR at 23. Likewise, the ALJ afforded "great weight" to Dr. Grand and Dr. Manders based on "their review of the entire record." AR at 23.

Other evidence supports Dr. Isakov's opinion. While Dr. Isakov offered the most restrictive view of Perrin's capacity, Dr. Kyle also observed Perrin's confusion, memory difficulties, and trouble focusing. AR at 263-65. Dr. Kyle opined that, though Perrin can understand simple directions and perform simple tasks, she "may need supervision" and

---

416.920b(c)(1)-(4). The modifications are intended to increase efficiency by "giving adjudicators more flexibility." *How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10,651, 10,651 (Feb. 23, 2012). Notably, the new regulations "do not alter an adjudicator's obligations under §§ 404.1512(d) and 416.912(d)," and the agency "expect[s] that adjudicators will often contact a person's medical source(s) first." *Id.* at 10,652.

       The Second Circuit has made clear that the version of the regulations in effect when the ALJ adjudicated the claim applies to this Court's review. *See Lowry v. Astrue*, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying the version of 20 C.F.R. § 416.912(e) in effect when the ALJ adjudicated the disability claim). Although it is less clear which version applies upon remand, the modifications do not substantively change the ALJ's obligations. As noted above, the ALJ must re-contact Dr. Isakov or obtain a neuropsychological examination to fill in the gaps in the record.

"may be impaired" in seven mental activities, including maintaining concentration, maintaining a regular schedule, and making appropriate decisions.  AR at 263.  The ALJ apparently resolved this uncertainty against Perrin but did not explain his basis for doing so.  Dr. Grand opined that Perrin could perform simple routine repetitive work with limited public contact, yet she was noncommittal as to whether Perrin would require substantial supervision.  AR at 77.  Based on Perrin's forgetfulness, disorientation, and bizarre behavior, Dr. Manders testified: "I don't think psychologically she can be entrusted with a job to follow instructions or anything . . . ."  AR at 57.  Dr. Manders interpreted an MRI, AR at 292-93, as signaling that Perrin's disoriented "spells" might be caused by vascular disease, AR at 56.

Upon remand, the ALJ should re-contact the medical sources to clarify whether Perrin requires supervision and whether further testing is needed to determine her residual functional capacity.  Neuropsychological testing seems warranted but, if the ALJ finds no need for this, then Dr. Isakov's opinion cannot be discounted on that basis.

**B. Evaluation of Subjective Complaints**

Perrin next contends that the ALJ failed to provide reasons for discrediting her statements about her symptoms and limitations.  To evaluate the credibility of a claimant's subjective complaints, the ALJ must first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, and second evaluate the intensity, persistence, and limiting effects of those symptoms.  20 C.F.R. §§ 404.1529(b)-(c); 416.929(b)-(c).  The ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record."  SSR 96–7.

The ALJ made just two statements as part of his adverse credibility finding.  In

8

the first, the ALJ found that Perrin's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 21. Neither this explanation nor the record provides substantial support for the ALJ's finding.

"One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record . . . ." SSR 96-7. Perrin's testimony was substantially consistent, and her statements were also confirmed by the testimony of Wayne Barrett, Perrin's live-in boyfriend. Perrin testified at the hearing that she does not leave the house by herself due to a fear of getting lost or hurt, citing one instance of getting lost on her way to a nearby store. AR at 40-41. Perrin further testified that she makes her bed, washes dishes, watches television, but is unable to cook due to carpal tunnel syndrome. AR at 36-39.[4] Perrin's hearing testimony echoes statements that she made on prior occasions to Dr. Teli, Dr. Kyle, and Dr. Isakov, though there are some discrepancies regarding her ability to cook, shop, and travel. AR at 254-59, 262, 266. Consistent with Perrin's testimony, Barrett testified that Perrin cannot leave the house alone because she "just loses it sometimes." AR at 45-46, 52. Barrett testified that Perrin does laundry, washes dishes, and watches television, AR at 52, but that he does not trust her in the kitchen due to her concentration problems, AR at 45. The ALJ should have explained why he discredited Perrin's consistent statements and why Barrett's testimony, which was awarded "some weight," AR at 23, did not lend further credibility to Perrin's complaints.

---

[4]The record does not contain a diagnosis of carpal tunnel syndrome.

9

Instead of pointing to evidence to support his belief that Perrin was exaggerating, the ALJ relied on boilerplate language to discount Perrin's testimony. In a conclusory manner, the ALJ stated that Perrin's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 21. This boilerplate language "implies that ability to work is determined first and is then used to determine the claimant's credibility." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). This reasoning is problematic because "the assessment of a claimant's ability to work will often . . . depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms." *Id; see also Smollins v. Astrue*, No. 11–CV–424, 2011 WL 3857123, at *10–11 (E.D.N.Y. Sept. 1, 2011) (criticizing this language as "flawed not only in its brevity, but also in its acceptance as a foregone conclusion of [claimant's] capacity"). Thus, it was error for the ALJ to discount Perrin's complaints because they conflicted with the ALJ's residual functional capacity assessment. Though this language can be harmless "[i]f the ALJ has otherwise explained his conclusion adequately," *Filus v. Astrue*, -- F.3d --, 2012 WL 3990651, at *4 (7th Cir. Sept. 7, 2012), here the ALJ did nothing to connect his recitation of the record evidence with his adverse credibility determination. AR at 16-21.[5]

In the only other statement regarding his credibility finding, the ALJ stated that "based upon the substantial medical evidence set forth above, the claimant's medical

---

[5]On appeal the Commissioner offers reasons for finding Perrin not credible, but the ALJ did not identify these in his credibility decision. These post hoc rationalizations are not entitled to any weight. *Snell*, 177 F.3d at 134 ("A reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.'" (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

impairments could not be found to impair the claimant's ability to do basic work activities to the degree alleged by the claimant." AR at 21-22. Not only does the ALJ fail to point to any "substantial medical evidence" that discredits Perrin, but the ALJ also fails to address the gap in the record due to the lack of neuropsychological testing. Dr. Manders testified that there was no way to determine the extent of Perrin's symptoms other than relying on her self-reporting or obtaining neuropsychological testing. AR at 65, 69. The ALJ erred by rejecting Perrin's subjective complaints as unsupported while refusing to seek objective support.

Upon remand, the ALJ is directed to make a credibility determination consistent with the requirements of 20 C.F.R. § 404.1529(b)-(c) and 20 C.F.R. § 416.929(b)-(c).

## C. The Vocational Expert's Testimony

The vocational expert opined that Perrin would be able to perform her past work as a data entry clerk if her residual functional capacity matched that described by the ALJ, but would not be able to perform any work if her capacity matched that described by Dr. Isakov. AR at 80-86. A vocational expert's opinion is useful only when based on the claimant's actual limitations and capabilities. *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Because it is not possible to determine Perrin's residual functional capacity based on the current record, it is also not possible to determine whether the vocational expert's opinion is appropriate.

## III

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings is granted. The case is remanded to the Commissioner for further proceedings consistent with this opinion. Upon remand, the ALJ must apply the proper legal standard for reviewing Dr. Isakov's opinions and Perrin's statements. If the ALJ finds no need for a neuropsychological

11

evaluation, then the ALJ may not simply discount Dr. Isakov's opinion as based on an incomplete record or Perrin's statements as inconsistent with the objective evidence.

        **SO ORDERED.**        /s/ Judge Frederic Block

                                                          FREDERIC BLOCK
                                                          Senior United States District Judge

Brooklyn, New York
September 27, 2012